# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JAMES A. ZIMMERMAN,

      Petitioner,

v.                                    Case No. 5:16-cv-659-Oc-02PRL

FLORIDA ATTORNEY GENERAL and
SECRETARY, DEPARTMENT OF
CORRECTIONS,

      Respondents.

_____/

## ORDER

On November 9, 2016, the Court received Petitioner Zimmerman's Petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody. Dkt. 1. He filed an Amended Petition on December 2, 2016. Dkt. 5. Petitioner seeks relief from a 2012 Florida state court conviction. *Id.* at 1. Respondents have filed a response in opposition. Dkt. 10. The Court finds that no hearing is necessary and DENIES the Amended Petition.

## BACKGROUND

On June 8, 2012, a jury in the Circuit Court of the Fifth Judicial Circuit, in and for Marion County, found Petitioner guilty of one count sexual battery of a physically helpless person. Dkt. 11-2 at 93. Evidence at trial showed that Petitioner

committed the battery against the victim, who was living in his residence at the time, while she was sleeping. Dkt. 11-1 at 397-98. In addition to the victim's testimony that Petitioner raped her, the State presented evidence of Petitioner's DNA found in a semen sample on the crotch of the victim's pajama bottoms. *Id.* at 498, 512, 514. There was also testimony that on a recorded, "controlled" call, Petitioner admitted pulling down the victim's pants that evening "to prove a lesson to her." *Id.* at 466. Petitioner was sentenced to thirty years' imprisonment. Dkt. 11-2 at 105.

Petitioner appealed the judgment through counsel, raising only an ineffective assistance of counsel argument. Dkt. 11-2 at 177, 195. The District Court of Appeal for the Fifth District of Florida (Fifth DCA) per curiam affirmed the judgment, noting that such a claim "may be raised on direct appeal only where the ineffectiveness is apparent on the face of the record," and that the affirmance was without prejudice to Petitioner's right to seek postconviction relief. *Id.* at 254-55.

Petitioner, through counsel, next filed his 3.850 motion for postconviction relief in the circuit court, raising roughly fifteen grounds of ineffective assistance of trial counsel. Dkt. 11-2 at 273. The court held an evidentiary hearing, *id.* at 382, and denied the motion, *id.* at 528. In the subsequent appeal Petitioner raised twelve grounds for ineffective assistance of counsel, Dkt. 11-3 at 210, and the Fifth DCA per curiam affirmed. Dkt. 11-3 at 298.

Petitioner, through counsel, then filed his habeas Petition and Amended Petition in federal court. Dkts. 1, 5. He has also filed a memorandum in support of the Amended Petition. Dkt. 6. Respondents acknowledge the Petition's timeliness. Dkt. 10 at 4.

Petitioner raises a number of claims related to ineffective assistance of counsel. As categorized by Petitioner, the first issue is ineffective assistance of counsel based on the following: (1) numerous deficiencies of trial counsel, including that he lacked knowledge of substantive and procedural law; (2) counsel failed to demand a speedy trial when he learned that DNA evidence was not available; (3) counsel did not prepare for trial, including taking depositions; (4) counsel did not research DNA in anticipation of the State's evidence, did not obtain a defense DNA witness, and did not sufficiently address the DNA evidence's shortcomings; (5) counsel conducted a "meaningless" voir dire; (6) counsel did not object to the court's extended comments during voir dire about Petitioner's right not to testify; (7) counsel did not object to the prosecutor's opening statements implying that the Petitioner would testify; (8) counsel conceded Petitioner's guilt in the opening statement; (9) counsel did not implement a trial strategy; (10) counsel failed to object to the prosecutor's questions; (11) counsel advised Petitioner not to testify; (12) counsel did not adequately address the State's argument about Petitioner's flight; and (13) cumulative error.

The remaining issues relate to conflict: (14) counsel did not demand a speedy trial due to his own financial interests; and (15) counsel did not vigorously cross-examine the victim because of his relationship with the victim's boyfriend whom he had represented.

## LEGAL STANDARD

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA "establishes a highly deferential standard for reviewing state court judgments," *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003) (citation omitted), that does not allow relief from a state court conviction on a claim "'that was adjudicated on the merits in the State court proceedings' unless the state court's decision was '(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,'" *Nejad v. Attorney Gen., State of Ga.*, 830 F.3d 1280, 1288 (11th Cir. 2016) (quoting 28 U.S.C. § 2254(d)).

"Clearly established Federal law" means holdings of the U.S. Supreme Court "as of the time of the relevant state-court decision." *Id.* at 1288-89 (citation omitted). "Contrary to" requires a state court conclusion "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case

differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 1289 (citations omitted) (alterations in original). The "unreasonable application" clause applies only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (citation omitted) (alterations in original).

A state court's factual determination, meanwhile, "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* (citation omitted). AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Id.* (citation omitted). This is a "demanding but not insatiable standard, requiring proof that a claim is highly probable." *Id.* (citation and internal quotation marks omitted).

Counsel is ineffective under the Sixth Amendment if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). But in the habeas context, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher

threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation and internal quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied *Strickland*'s deferential standard,' then a federal court may not disturb a state-court decision denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (citation omitted).

## DISCUSSION

Respondents argue that claims two, seven, and eight are procedurally defaulted, and that Petitioner's ineffective assistance of counsel claims are without merit. Dkt. 10 at 5. Petitioner did not reply. *See* Dkt. 12-13. The Court finds that a hearing is unnecessary, *see Turner v. Crosby*, 339 F.3d 1247, 1274-75 (11th Cir. 2003), and will handle the issues in turn.

I.    <u>Counsel was ineffective on the face of the record</u>

It is unclear whether Petitioner's first stated ground is a discrete ineffective assistance of counsel claim or merely encapsulates the many different deficiencies alleged. The "supporting facts" in the petition state, in their entirety,

> Attorney lacked knowledge of substantive and procedural law. Did not understand the concept of evidentiary hearings (Richardson); deposition of witnesses; prepare witnesses for and utilize witnesses appropriately during trial; failed to develop[] favorable witness testimony and allowed for improper cross-examination. Failed to obtain witnesses, such as a DNA expert. Failed to properly cross-examine State's DNA expert.

Dkt. 5 at 7. As with Petitioner's other overlapping claims, some of these points are also addressed in other grounds for relief.

After an evidentiary hearing, the postconviction court issued a lengthy ruling on Petitioner's 3.850 motion in which it denied all Petitioner's claims and stated "[t]o the extent that it is deemed necessary, it should be noted that the Court has accepted the testimony of [trial counsel] as more credible than that of [Petitioner]." Dkt. 11-2 at 566. Before addressing the individual claims, the court also noted that:

> the trial attorney for [Petitioner] was working within the constraint imposed by the fact that [Petitioner] had admitted committing the crime. More specifically, when trial counsel asked about his trial strategy, he candidly offered this reply:
>
> Q: Did you discuss with him the fact that if he did testify and he lied on the stand, you would not be able to ask questions and he would have to testify in narrative form?
>
> A: Absolutely. . . . It was actually that I told him that that's how it was going to be, because he had already told me that he did it. So there was no question as to what he was going to testify to; I knew. He had already told me in confidence what happened. . . .

Dkt. 11-2 at 529-30.[1]

The court then broke up Petitioner's first claim into four categories: (1) counsel's lack of experience, and ignorance of (2) procedural law, (3) the potential criminal punishment, and (4) the handling of evidentiary issues. On the first point,

---

[1] Petitioner now contests this admission. Dkt. 6 at 56 n.77. The Court finds that the postconviction court was not unreasonable in any related factfinding. Moreover, the absence of any such admission by Petitioner does not alter the Court's analysis.

the postconviction court cited counsel's testimony that, prior to his representation of Petitioner, he had tried at least six felony cases at trial, including cases involving sexual battery, and had selected at least a couple dozen juries. *Id.* at 531. He also worked as both a state prosecutor and public defender. The court then noted that a "general accusation that trial counsel was inexperienced does not demonstrate deficient performance." *Id.* (citing *Gamble v. State,* 877 So. 2d 706 (Fla. 2004)). Rather, Petitioner must connect this lack of experience to some deficient performance.

The postconviction court then observed that the "procedural aspects" noted by Petitioner merely concerned a discussion regarding calendar conflicts, and that the trial took place five months after the discussion. *Id.* at 531-32. As for Petitioner's possible punishment as a habitual felony offender, the postconviction court found it relevant that the State did not file its notice of intent to seek the habitual offender status or qualification as a prison releasee reoffender until near the conclusion of a hearing on January 9, 2012, days after the consequences had been explained to counsel. *Id.* at 532. It is unclear how such allegedly deficient performance could affect the result of the criminal proceedings.

Lastly, the court rejected Petitioner's claims that if he was aware of counsel's shortcomings he would not have proceeded to trial with counsel but would have obtained a more experienced attorney. Dkt. 11-2 at 533-34. The court

noted that Petitioner had attended seven hearings with counsel at which Petitioner could observe counsel's abilities, and at no point did he express any concerns. *Id.* And, again, Petitioner fails to tie any general inexperience or shortcomings of counsel to deficiencies or prejudice at trial.

The postconviction court considered the issue of DNA, which consumes much of Petitioner's supporting memorandum, Dkt. 6 at 16-40, as it related to Petitioner's other claims. Petitioner now claims that trial counsel was ineffective in challenging this evidence. A few points are worth noting.

First, though Petitioner claims that defense counsel should have retained a DNA expert to rebut the State's witness, as explained below, there was simply no money for it. Petitioner seems to suggest that counsel should not have agreed to handle a case that required costs to retain an expert. Dkt. 6 at 22. Yet the need for an expert was attenuated because, as counsel opined, there were very few aspects of the DNA evidence to challenge, and Petitioner's claims to the contrary and of "manipulation" or confusion between a major and minor "contributor" are mere speculation. Dkt. 6 at 26; Dkt. 11-1 at 511; Dkt. 11-2 at 514; *see Carroll v. Crosby*, No. 6:05-CV-857-ORL-31KRS, 2008 WL 2557555, at *9 (M.D. Fla. June 20, 2008), *aff'd*, 574 F.3d 1354 (11th Cir. 2009) (finding no habeas relief warranted where state court determined counsel decided not to hire a DNA expert because the DNA evidence was "pretty solid" and the laboratory that did the work was not

under scrutiny); *see also Merriel v. Sec'y, Dept. of Corr.*, No. 6:11-cv-1100-Orl-37DAB, 2013 WL 1365744, at *5 (M.D. Fla. Apr. 4, 2013) ("Petitioner does not allege that he had consensual sexual intercourse with the victim; therefore, he gives no explanation for the presence of his DNA. Petitioner has not shown that counsel's failure to further question [the State's DNA witness] or obtain a defense expert resulted in prejudice.").

What is more, trial counsel was at the outset unaware the State would produce DNA evidence because the State initially suggested it would not use DNA. Dkt. 11-2 at 415-16. Counsel asked for a *Richardson* hearing and to exclude the evidence, which was unsuccessful.[2] *Id.* To prepare for trial, counsel nonetheless conducted some independent research on DNA and discussed the issue with a DNA specialist. Counsel was also able to depose the State's DNA analyst. Petitioner, moreover, is unable to point with specificity to deficient aspects of counsel's cross-examination at trial. *See* Dkt. 11-1 at 516-28. In any event, Petitioner cannot show prejudice because the jury was still presented with the victim's unambiguous testimony in which she identifies Petitioner. *See Merriel*, 2013 WL 1365744, at *5.

---

[2] Under *Richardson v. State*, 246 So. 2d 771 (Fla. 1971), "[o]nce [an] asserted discovery violation [is] brought to the court's attention, the trial judge [is]required to conduct an inquiry, rule on whether a violation occurred, and determine whether the evidence [is] admissible." *C.D.B. v. State,* 662 So. 2d 738, 741 (Fla. 1st DCA 1995).

Moving on, Petitioner does not elaborate on his claim of "deposition of witnesses." Counsel did depose witnesses, and Petitioner does not persuasively argue that the result at trial would have been different had counsel transcribed the depositions. *Cf. Jackson v. Jones*, No. CIVA 06-0172-BHC, 2007 WL 2069918, at *14 (S.D. Ala. July 16, 2007) ("Petitioner has made no allegation of any particular evidence or information which would have been discovered that had not already been produced pursuant to the trial court's discovery order. Therefore, Petitioner has failed to establish that he was in any way prejudiced by his trial counsel's failure to file a motion for discovery."). Counsel was nonetheless taking copious notes during the depositions. Dkt. 11-2 at 416.

The Court finds that the postconviction court was not unreasonable in finding no meritorious *Strickland* claim for Petitioner's first ground. To the extent that the postconviction court rested its determination solely on deficient performance or prejudice, the Court finds de novo that Petitioner does not establish either prong. *See Ferrell v. Hall*, 640 F.3d 1199, 1226 (11th Cir. 2011) (citations omitted).

II.     <u>Failure to demand a speedy trial</u>

Petitioner argues that counsel was ineffective for failing to demand speedy trial when he discovered that the State was not yet able to process DNA evidence. Dkt. 5 at 8. Though he raises the issue here, Petitioner admits that "[a]fter

conducting evidentiary hearing, it was determined that the issue was not appropriate for appeal." Dkt. 5 at 10. Petitioner also acknowledges that because this claim was not presented to the state appellate court, it is not exhausted. Dkt. 6 at 11 n.17.

Indeed, to avoid default of federal claims, (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner." *Upshaw v Singletary*, 70 F. 3d 576, 578-79 (11th Cir. 1995). Because at this stage Petitioner is unable to present his claims to the state court, the grounds are procedurally defaulted. *See, e.g.*, *Crosby v. Crosby,* No. 502cv129OC10GRJ, 2005 WL 1126563, at * 2 n.15 (M.D. Fla. May 5, 2005) (citing *Tafero v. State,* 561 So.2d 557 (Fla. 1990) for proposition that "additional claims of ineffective assistance of counsel cannot be raised in a successive motion for post conviction relief where ineffectiveness was raised and addressed in the first motion"); *Allen v. Sec'y, DOC*, No. 2:12-CV-644-FtM-29CM, 2016 WL 762648, at *5 (M.D. Fla. Feb. 24, 2016), *aff'd*, 767 F. App'x 786 (11th Cir. Apr. 3, 2019) ("Petitioner cannot return to state court to present this claim because Florida procedural rules preclude a second, untimely Rule 3.850 motion absent certain extenuating circumstances that are not present in this case."); *see also Frazier v. State,* 898 So.2d 1183, 1183-84

(Fla. 3d DCA 2005) (barring as successive claims that could have and should have been made in previous postconviction motion).

"[A] state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Alderman v. Zant*, 22 F. 3d 1541, 1549 (11th Cir. 1994) (citation omitted). "Cause exists if there was 'some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule.'" *Mize v. Hall,* 532 F.3d 1184, 1190 (11th Cir. 2008) (citation omitted). Prejudice requires Petitioner to show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

Petitioner does not argue cause or prejudice and, again, acknowledges failure to exhaust. Nor is he able to make out a claim under *Martinez v. Ryan*, 566 U.S. 1 (2012) because he was represented during his initial-review collateral proceeding and there is no claim that postconviction counsel (indeed, the same as current counsel) was ineffective. In any event, the postconviction court's determination on the matter was not unreasonable.

III.    Inadequate trial preparation

The supporting facts for ground three state, in their entirety:

> Failed to file pre-trial motions to avoid the victim's utilization
> of the terminology "rape" (which did not occur); any testimony
> associated with flight as referenced by Bicklser & Ramirez, as
> well as the opinion testimony of lay witnesses, Jonathan
> Richards "If there were 14 witnesses to testify, he didn't care if
> it took 14 murder trials to prevent them from testifying."
> Counsel, himself, indicated there was no trial strategy. There
> was no independent effort to obtain DNA expert or develop
> trial preparation in accordance with that issue.

Dkt. 5 at 10.

In denying the poorly-worded claim, the postconviction court looked to
counsel's testimony that he did not file a motion in limine regarding Petitioner's
flight because he did not have a basis to exclude the statements; the "police were
the ones that originally spoke of that, because . . . they could not get in touch with
[Petitioner]." Dkt. 11-2 at 537. As for the "fourteen witnesses" statement[3], trial
counsel did not "believe that was opinion. He would be saying a statement against
interest, and that would come in over my objection." *Id.* at 420. The evidence was
highly relevant. Petitioner has not shown prejudice or deficient performance for
counsel's failure to object to the statement. Indeed, courts have recognized
strategic reasons for electing not to object, such as not drawing attention to the

---

[3] A witness called by the defense testified during cross-examination that Petitioner told him Petitioner
would "do whatever it took" so the case would not go to trial, including murdering witnesses. Dkt. 11-1 at
573.

admissible testimony. *See, e.g.*, *Watts v. Sec'y, Fla. Dep't of Corr.*, No. 3:14-CV-558-J-39MCR, 2017 WL 2021701, at *12 (M.D. Fla. May 12, 2017) (citations omitted)

Additionally, Petitioner does not explain any basis for excluding the use of the word "rape" (especially in a pre-trial motion); rather, he seems to argue semantics, claiming that, despite the victim's testimony, rape "did not occur." More importantly, Petitioner does not demonstrate how failure to move to exclude was deficient or affected the result at trial: There was nonetheless testimony of a nonconsensual sexual battery.

As explained above, counsel also testified that he conducted depositions that were not later transcribed because they were not helpful to the defense and counsel "didn't waste his money on doing that." Dkt. 11-2 at 539. There was also "extensive testimony regarding the defense theory and how Counsel arrived at that theory," namely that Petitioner "didn't do it," and "to him it was consensual." *Id.* at 394, 541. According to counsel, Petitioner nonetheless insisted that the DNA that "came back to him" was not in fact Petitioner's. *Id.* at 538. Counsel did not develop the consensual encounter theory because "it is the law that you cannot consent when you are intoxicated [and asleep]. . . . He claimed it was consensual. But never provided that she was awake, he never provided that she wanted it." Dkt. 11-2 at 539-40.

The Court agrees and cannot find the postconviction court's determination unreasonable on the record. To the extent that the postconviction court rested its determination solely on deficient performance or prejudice, the Court finds de novo that Petitioner does not establish either prong.

IV.     Inadequate rebuttal of DNA evidence

The supporting facts for ground four state, in their entirety:

> Counsel, admittedly, lacked training and experience in DNA evidence. Failed to appropriately familiarize himself with DNA terminology and understand the "shortcomings" of the State's DNA expert, or thereafter, [d]id not hire a DNA expert after advising Petitioner he would. His only preparation for trial was a brief conversation over cocktails with someone he believed had DNA expertise.

Dkt. 5 at 11.

For this claim, the postconviction court began by noting some of the pre-trial history of the case: As mentioned above, initially the State was not going to introduce DNA evidence but then moved to continue trial. Dkt. 11-3 at 79-80. That motion was granted over counsel's objection. *Id.* at 81. Counsel then deposed the DNA analyst having researched DNA himself, attempted to get the evidence excluded, and did attempt to discredit the evidence at trial through cross-examination. Dkt. 11-2 at 542-44. If there was a discussion between counsel and Petitioner about hiring a DNA expert, "it would have been the fact that he would

have to pay for it and he didn't have the money. So it didn't go any further than that." *Id.* at 543.

Petitioner's current insistence that something more was required is unavailing. *See Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003) ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.").

It is worth noting for purposes of prejudice that the State had more than just DNA evidence; it also had Petitioner's inculpatory statements made in the taped phone call and the victim's unequivocal testimony to Petitioner raping her. The Court cannot find the postconviction court's determination unreasonable on this record. To the extent that the postconviction court rested its determination solely on deficient performance or prejudice, the Court finds de novo that Petitioner does not establish either prong.

V.    Meaningless Voir Dire

The supporting facts for ground five state, in their entirety:

> No jury discussion regarding a reasonable doubt, burden of
> proof and presumption of innocence. Failure to explore
> prejudices such as not to testify. Only 104 words were spoken
> by the panel to counsel. Less than 7 minutes referenced in 7

transcript pages as an evaluation of the jury. Never affording
the Petitioner to acknowledge satisfaction with the jury;
allowing Juror Wagner to remain on the jury.

Dkt. 5 at 14. The postconviction court began its analysis of the voir dire claims by

noting:

> the purpose of voir dire is to secure an impartial jury. Effective
> assistance of trial counsel includes a proficient attempt to
> empanel a competent and impartial jury through the proper
> utilization of voir dire, challenges to venire members for cause,
> and the proper employment of peremptory challenges to venire
> members. The test for juror competency and impartiality is
> whether a given juror is capable of placing any bias or prejudice
> aside and is willing and able to render a verdict
> recommendation solely on the evidence presented at trial and
> the instructions on the law provided by the court.

Dkt. 11-2 at 545 (citations omitted). After reviewing the extensive testimony at the

evidentiary hearing, the Court concluded that "[i]n light of the questioning of the

prospective jurors by the State and the Court's statements, it is difficult to fault

trial counsel for failing to repeat the questioning. Defendant seems to argue that

Counsel could have asked different questions to obtain a more defense-friendly

jury; such speculation fails to rise to the level of ineffective assistance under

*Strickland.* Defendant has failed to show any prejudice." Dkt. 11-2 at 550 (citations

omitted).[4]

---

[4] The trial court asked the venire, for example, "Is there anybody sitting here right now saying, 'Well, you
know what? That's good, [the judge] is telling me some good information, but that's not how I look at it.
And if you leave me on a jury or I'm selected to be on this jury and [Petitioner] chooses not to testify, I

As for a particular juror who had a "troubled past and similar type case,"
counsel was unable to recall why he left him on the jury. But in his memorandum,
Petitioner instead points out (correctly) that Juror Wagner was merely friends with
a law enforcement officer. Dkt. 6 at 49; *see also* Dkt. 11-1 at 302.[5] And even if the
juror did have personal experience in a similar case, that does not necessarily mean
he would be unable to fairly deliberate in Petitioner's case. Indeed, there is no
indication that he would not have acted impartially following the Court's
comments to the venire, *see, e.g.*, Dkt. 11-1 at 317, 329, and, later, jury
instructions. *See Ruiz v. Sec'y, Fla. Dep't of Corr.*, 439 F. App'x 831, 834 (11th
Cir. 2011) ("[J]urors are presumed to follow instructions.").

Again, putting aside his bald speculation and complaints with how voir dire
was conducted wholesale, Petitioner is unable to point to any specific indication on
the record suggesting deficient performance or prejudice. The Court cannot find
the postconviction court's determination unreasonable, and to the extent the
decision may have rested on prejudice, the Court finds no deficient performance.

VI.     Comments about Petitioner's right not to testify

The supporting facts for ground six state, in their entirety:

> The trial court interjected throughout the voir dire process about
> an explanation of the Petitioner's right to testify or not and the

---

am going to hold it against him; I'm not going to like that'? Anybody feel that way, one way or another?
Because, again, no right or wrong answers, just let us know." Dkt. 11-1 at 286.
[5] A prospective juror did have a son who was in prison on sexual battery charges. Dkt. 11-1 at 295. It
appears the State struck her as a juror. *Id.* at 346.

> comments were improper to which there was no objection.
> Counsel, himself, failed to develop jury sentiment concerning
> the very issues.

Dkt. 5 at 15.

The postconviction court resolved this issue in conjunction with ground V. The trial court, of course, did address a defendant's choice not to testify during voir dire. Dkt. 11-1 at 284-88. But though Petitioner claims the comments were "improper," he does not specify which comments in particular or in what ways they were improper. Nothing in the record appears to be a misstatement of the law. Petitioner further fails to establish that trial counsel was deficient for not contemporaneously objecting to the court's statements and, more importantly, that the postconviction court was unreasonable for finding no prejudice.

VII.    <u>The prosecutor's statements implying that Petitioner would testify</u>

As with Petitioner's second claim, Petitioner states that after conducting the evidentiary hearing, appeal on this ground was not deemed appropriate. Dkt. 5 at 16. He further acknowledges failure to exhaust and does not argue cause or prejudice. Nor is he able to make out a claim under *Martinez v. Ryan*. The claim is defaulted. In any event, the postconviction court's determination was not unreasonable.

VIII.   Conceding Petitioner's guilt in defense counsel's opening statement

The same is true for Petitioner's eighth ground. Dkt. 5 at 17. He again acknowledges failure to exhaust and does not argue cause or prejudice. *Martinez* is unavailing. The claim is defaulted, and the postconviction court's determination was not unreasonable.

IX.   Counsel did not implement a trial strategy;

The supporting facts for ground nine state, in their entirety:

> Petitioner's attorney, himself, stated that there was no trial theory and the case should not have gone to trial. Counsel unnecessarily called witnesses without any specific purpose that became harmful to the Petitioner, and then not objecting when the State was able to go beyond direct examination and develop opinion testimony: "If there were 14 witnesses to testify, he didn't care if it took 14 murder trials to prevent them from testifying." Failure to rehabilitate witnesses. Failure to develop third party sexual contact as a defense.

Dkt. 5 at 18. In denying the claim, the postconviction court relied heavily on trial counsel's testimony about the problems with the theory of the case—namely, that Petitioner "didn't do it." Counsel testified, for example, there were no witnesses he could call that would support the defense and that, after taking depositions of potential witnesses, he found their testimony unreliable or damaging (one potential witness was a convicted felon; another could not be tracked down). Dkt. 11-2 at 345, 552.

Trial counsel testified to calling one witness who provided evidence about the proximity of phones and a computer to the victim at the time of the incident, suggesting the victim could have reported the incident to law enforcement earlier if she wanted. *Id.* at 553. The postconviction court observed that the same witness also testified that the morning after the incident the victim rode in the same vehicle as Defendant, which could be exculpatory evidence. On cross-examination by the State, however, that witness made statements that related to Petitioner's possible flight, thereby potentially incriminating him. *Id.* at 554. Counsel clarified that, according to his recollection, the content of those statements was not provided to him before trial, and that he would not have called her as a witness if it were. *Id.* at 554-55.

Counsel also called a witness who testified that he and the victim were in a car "making out" for two hours the night of the incident, and that the individual later testified the victim "was never really that convincing" when talking to him about the incident. *Id.* at 20, 555; *see also* 11-1 at 570. This could also be seen as exculpatory evidence. On cross-examination, this witness made the "fourteen witnesses" statement, which, as with the other witness's statements about flight, was perhaps unforeseeable. Dkt. 11-1 at 573.

Though counsel must of course present as ably as he can when a defendant insists—over counsel's advice—on going to trial, he cannot be faulted for an

otherwise weak case. The postconviction court was not unreasonable in finding no meritorious *Strickland* claim. To the extent the decision may have rested on prejudice or deficient performance, the Court finds neither prong satisfied.

X.     Counsel failed to object to the prosecutor's questions

The supporting facts for ground ten state, in their entirety:

> Improper remarks and questions were not objected to by defense counsel. Witnesses, such as Gregory Smith, who were called for one purpose, were allowed to be cross-examined outside of that purpose and proved harmful to Petitioner. The witness was also allowed to render speculative unrelated opinions without objection and were harmful to Petitioner. Judgment of acquittal was based only on the personal opinion of trial counsel and not on facts; counsel was unable to properly impeach the victim predicated upon his lack of knowledge of procedural rules.

Dkt. 5 at 19. The postconviction court divided its analysis of this claim among failure to object, the motion for judgment of acquittal, and jury instructions. Dkt. 11-2 at 556-58. The court first observed that Petitioner complained of only three questions and one of the victim's answers that counsel did not object to, conduct far short of the case Petitioner relied upon, G*ordon v. State,* 469 So. 2d 795 (Fla. 4th DCA 1985). Dkt. 11-2 at 308, 556. Furthermore, as mentioned above, courts have recognized strategic reasons for electing not to object. *See, e.g.*, *Watts*, 2017 WL 2021701, at *12. And counsel did in fact raise objections on the basis that some of the State's cross-examination went beyond the scope of counsel's direct examination, but the postconviction court noted those objections were denied with

language that suggested additional lines of questioning would be allowed on cross and further objection would not be sustained. Dkt. 11-2 at 557.

As for the motion for judgment of acquittal, the court noted that even a more artfully crafted motion would have been unavailing because of the totality of the evidence against Petitioner. *Id.* Indeed, in addition to the DNA evidence, the victim identified Petitioner as the person who raped her while she was sleeping. *Id.*

The postconviction court's determination—including, to the extent Petitioner may argue it, any deficiency relating to jury instructions—was not unreasonable. To the extent the decision may have rested on prejudice or deficient performance, the Court finds neither prong satisfied.

XI.  Counsel advised Petitioner not to testify

The supporting facts for ground eleven state, in their entirety:

> The Petitioner had extensive impeachment information that could have been delivered to the jury relating to motive, mental stability and even prior inconsistent statements of the victim. Petitioner wished to establish the motive that the victim wanted him off the property so that items could be stolen. Petitioner was advised not to testify due to the uncertainty of jury's reception of his criminal history which was not addressed by defense counsel during voir dire. See Ground Five.

Dkt. 5 at 20. The postconviction court denied the claim after reviewing the extensive colloquy between the judge and Petitioner. Dkt. 11-2 at 562. That conversation addressed, among other things, the very possibility of claiming an ineffective assistance of counsel claim related to a defendant's right to testify:

[The Court:] You understand you have an absolute right to testify. The jury would be instructed they are not to infer anything about that, they can't hold it against you, that's your constitutional right. But on the flip side, you certainly do have a right to testify if you want to. And ultimately, while your attorney may give you advice one way or another, it is - the final decision is your decision and your decision alone. You understand that, sir?

. . .

[State:]  [T]he State believes that we can prove the Defendant has eight prior felony convictions and . . . two prior misdemeanor crimes of dishonesty.

[The Court:] The point being here, is - so you understand - if you get up to testify, the State would be able to cross-examination or your attorney would be able to ask you, "Have you been convicted of prior felonies? If so, how many?" "Have you been convicted of prior crimes of dishonesty? If so, how many?" If you answered those correctly, that's the extent of the discussion. In other words, they can't delve into your past, just the fact that you have those, unless you choose to do so. That's your own strategic decision. So, what - my point being, while we are having this discussion outside the presence of the jury, I don't want your decision to be influenced about your concern that if you get on the stand [the State] may ask you about the history of those cases. You understand that?

…

Okay. So, any Defendant has a right, if they choose to do so, say, "Yeah, I was a - I do have a prior record, but let me explain to you why that should be that much - that happened 30 years ago or whatever it is." That's your choice. So, I wanted to make it extremely clear on the record, because we do have this sometimes from Defendant[s] after the fact, "Well, my lawyer told me that all this stuff is going to come out if I testify. That's why I chose not to testify and that was not good advice." So, we want to make sure that - I'm not - I don't want you to tell me about what you and [defense counsel] talked about, that's privileged. But I want to make sure I'm clear [on] record and  you are clear [on] record; you seem like an intelligent

person; you are listening; you are paying attention that you
understand that your choice not to testify should not be affected
by your concerns that prior facts of your criminal record would
come out. Do you understand that?

[Defense:] We have discussed it at length, Your Honor -

…

[State]: One more thing, if we can put it on the record.
There was a controlled phone call that we have provided to the
Defense through the discovery process involving the
Defendant, and I know that [defense counsel] and I have
reviewed parts of that. And [defense counsel], I'm certain,
reviewed that with his client; but that's one of the things that
the State would be able to cross-examination him about. So,
just so that [Petitioner] is clear.

Dkt. 11-2 at 559-62. Petitioner nonetheless repeatedly affirmed his decision not to

testify. *Id.* In so deciding, counsel, and likely Petitioner, weighed the marginal

value of putting forth a seemingly weak ulterior motive for the victim to fabricate

the allegations (to allow her to steal items belonging to Petitioner) against the risk

of additional, incriminating evidence.

The postconviction court was not unreasonable in finding the claim without

merit. *See Preston v. Sec'y, Dep't of Corr.*, 745 F. App'x 835, 838 (11th Cir. 2018)

(finding claim of faulty advice about defendant testifying was undermined by

"facts (1) that the trial court told him (accurately) that his prior history could come

out if he testified and (2) that [the defendant] indicated that he understood"). To the

extent the decision may have rested on prejudice or deficient performance, the

Court finds neither prong satisfied.

## XII.   Statements about Petitioner's flight

The supporting facts for ground twelve state, in their entirety:

> Prosecutor, having not previously addressed consciousness of flight, addressed same in his rebuttal when the flight issue had not been presented during the initial presentation or in defense counsel's closing; then failed to request a substantive argument in response to the new injection of perceived "guilt" being left in the jury's mind.

Dkt. 5 at 21. Petitioner seems to argue that trial counsel should have either contemporaneously objected to the prosecutor's statements concerning flight in the rebuttal or requested a surrebuttal that could somehow rehabilitate Petitioner.

The postconviction court found the cases that Petitioner relied upon inapposite and that the Florida Rules of Criminal Procedure are silent on a defendant's entitlement to surrebuttal. And, again, there may be strategic reasons for not objecting to or addressing incriminating evidence. *Watts*, 2017 WL 2021701, at *12. More importantly, Petitioner does not show that any such surrebuttal could have effectively rehabilitated Petitioner, especially in light of the other evidence against him. The postconviction court's determination was not unreasonable. To the extent that decision may have rested on prejudice, the Court finds no deficient performance.

## XIII.   Cumulative error

Petitioner also claims cumulative error. Dkt. 5 at 26. He admits that the claim was not raised independently but "was encompassed within the issues raised

in lieu of, not in addition to." *Id.* Furthermore, some of the underlying grounds Petitioner now brings are defaulted, and Petitioner cites no authority for the proposition that a cumulative error claim provides an avenue to bypass the procedural bar. *See Taylor v. Dunn*, No. CV 14-0439-WS-N, 2018 WL 575670, at *39 (S.D. Ala. Jan. 25, 2018), *certificate of appealability denied*, No. 18-11523-P, 2018 WL 8058904 (11th Cir. Oct. 5, 2018), *cert. denied*, 2019 WL 1083183 (U.S. May 13, 2019) (citations omitted) ("[The petitioner] may not circumvent the procedural bar by repackaging these improper claims under the heading of 'cumulative error.' If the underlying claims are procedurally barred (which they are), then the cumulative error claim based on those underlying claims likewise fails as a matter of law.").

Additionally, neither the Supreme Court nor the Eleventh Circuit has explicitly recognized the cumulative error doctrine for ineffective assistance of counsel. *See Collins v. Buss*, No. 3:09CV117/LAC/EMT, 2011 WL 4832536, at *21 (N.D. Fla. July 18, 2011), *report and recommendation adopted*, 2011 WL 4832534 (N.D. Fla. Oct. 12, 2011), *aff'd*, 507 F. App'x 915 (11th Cir. 2013); *see also Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 564-65 (11th Cir. 2009). And, in any event, the record before the Court is devoid of error or ineffective assistance of counsel, at least to such a level as to make out a claim. *See Morris v.*

*Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Habeas relief on this claim is unwarranted.

XIV. <u>Failure to demand speedy trial because of financial conflict</u>

The supporting facts for this ground state, in their entirety:

> Counsel unreasonably failed to file a Demand for Speedy Trial predicated upon the extended payment plan which he afforded Petitioner. Due to the fact that Petitioner owed money to his attorney on payment plan, the attorney unnecessarily extended Petitioner's case in lieu of filing a Demand for Speedy Trial.

Dkt. 5 at 23. In finding no prejudice, the postconviction court noted counsel's testimony that, because he charged Petitioner a flat fee for representation (though Petitioner paid "bit by bit"), it would not have been in counsel's best financial interest to "drag out the case"—quite the contrary. Dkt. 11-2 at 566; *see also Downs v. Sec'y, Fla. Dep't of Corr.*, 738 F.3d 240, 266 (11th Cir. 2013) (rejecting alleged conflict due to contingency fee arrangement).

Additionally, in ruling on the speedy trial issue in ground II, the postconviction court credited counsel's testimony (and rejected Petitioner's claims to the contrary) that it was Petitioner's desire to seek continuances in the hope that the State would drop the charges—even when the DNA evidence was unavailable:

> [Defense counsel:] Yes, and I have e-mail from [Petitioner] saying, "Why would we go to trial if there's no DNA?"
> . . .
> And he wanted to continue the case. He wanted me to continue the case so many times that the State drop the case. He did not want to go to trial.

. . .
> He indicated he didn't want to go to trial. He hoped and
> believed that [the victim] was not going to testify, that she
> would drop the case. I made it clear that it's not her decision
> and that the State doesn't have to drop the case. They don't
> even have to have DNA to go forward on the case. But he
> believed that she would not testify, and he wanted me to do
> every effort possible to continue the case, drag it out as long as
> possible.

Dkt. 11-2 at 535-36 (quoting *Gamble*, 877 So. 2d at 714 for the proposition that

"[i]f the defendant consents to counsel's strategy, there is no merit to a claim of

ineffective assistance of counsel.").

The postconviction court's determination was not unreasonable. To the

extent that decision may have rested on prejudice, the Court finds no deficient

performance.

XV.   Inadequate cross-examination of the victim because of conflict

The supporting facts for this ground state, in their entirety:

> Counsel's cross-examination and would-be impeachment of the
> victim was inept and was not predicated upon any type of pre-
> trial discovery or information supporting motive, mental health
> and inconsistent statements disclosed to him by Petitioner.
> Failed to utilize information provided him by Petitioner or
> Petitioner's investigator.

Dkt. 5 at 24. This claim was presented to the postconviction court, though briefly.

Dkt. 11-2 at 317 ("That trial counsel did not vigorously cross-examine the victim

or go into information that he had, predicated upon his representation of [the

boyfriend], that could have been utilized her for the benefit of [Petitioner.]").

Perhaps because of this brief treatment of the issue, the postconviction court focused its analysis on defense counsel's alleged reluctance to call the victim's boyfriend as a rebuttal witness. In any event, Petitioner fails to specify in what ways counsel's cross-examination was "inept," or, more importantly, how any ineptitude prejudiced him at trial. There is no indication that a more robust cross-examination of the victim, including the exploration of any motive to fabricate the allegations, would outweigh the incriminating evidence which included testimony about the inculpatory taped phone call and a positive DNA match from semen found on the victim's clothes.

As for the potential rebuttal witness, after reviewing the relevant evidentiary hearing testimony, the postconviction court determined that Petitioner failed to establish a conflict of interest and that there was no prejudice. The court noted counsel's testimony that, during his representation of the boyfriend in a case filed in 2010, he never received remuneration from the victim and only received one $500 payment from another individual. Dkt. 11-2 at 563. Counsel further testified that the victim never told him that if he was successful in the boyfriend's case that she would not testify in Petitioner's. *Id.* In fact, counsel never spoke to her except by deposition (after the boyfriend's case was over) and at trial. *Id.* at 564.

The postconviction court, which is better suited in matters of credibility than this Court, apparently found Petitioner's claims to the contrary to be unpersuasive.

Moreover, even if Petitioner does present a conflict of interest, that does not necessarily mean defense counsel was ineffective. *See Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980); *Hamilton v. Ford*, 969 F.2d 1006, 1012 (11th Cir. 1992); *Schwab v. Crosby*, 451 F.3d 1308, 1324 (11th Cir. 2006). And the value of calling the boyfriend as a rebuttal witness is unclear, especially given the totality of incriminating evidence. *See also Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) ("[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative."); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony or by the witness by affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").

The Court cannot find the postconviction court's determination unreasonable. To the extent the court's decision may have rested on deficient performance or prejudice, the Court finds neither prong satisfied. None of Petitioner's claims warrant habeas relief.[6]

---

[6] In addition to the above, Petitioner raises other arguments in his supporting memorandum. The miscellaneous complaints cover practically every aspect of trial, including trial counsel's motion for recusal of the judge, Dkt. 6 at 4, not obtaining a curative instruction relating to burden of proof, *id.* at 10, a closing argument that was "inept and followed no rational[] thought process," *id.*, or Petitioner's inability to "acknowledge his satisfaction with the composition of the jury" because of the trial judge, *id.* at 49. To the extent these claims are not defaulted, they are nonetheless unmeritorious.

## CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327 (citation omitted).

The Court finds that Petitioner does not establish this requirement. The Court decides not to issue a certificate of appealability in the matter.

**CONCLUSION**

The Court DENIES Petitioner's Amended Petitioner with prejudice. Dkt. 5. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Tampa, Florida, on July 18, 2019.

/s/ *William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record